OPINION OF THE COURT
Friedman, J.
This appeal requires us to determine whether a parole revocation proceeding may go forward against a parolee who has been found mentally incompetent to stand trial in a criminal prosecution based on the same charges that are at issue in the revocation proceeding. We hold that, under the circumstances of this case, the revocation proceeding may not go forward.
Petitioner Edwin Lopez was sentenced to 15 years to life on a second-degree murder conviction in the 1970s, and was released from prison to lifetime parole supervision on July 20, 1994. On or about August 11, 2008, while he was a resident of a mental health facility, petitioner allegedly assaulted another patient, for which he was arrested and charged with third-degree assault and two lesser charges. The court ordered a psychiatric examination to determine petitioner’s fitness to stand trial (see CPL art 730), and the two examining psychologists submitted reports, dated August 25, 2008, finding that he suffered from dementia, probably secondary to head trauma, and was unfit to stand trial.[1] Thereafter, a final order of observation was filed *107 committing petitioner to the custody of the Office of Mental Health {see CPL 730.40 [1]), and the criminal charges against him were dismissed {see CPL 730.40 [2]).
On August 27, 2008, two days after the date of the reports finding petitioner unfit to stand trial, a parole revocation proceeding was commenced against him. It was alleged that petitioner’s conduct in the incident of August 11, 2008 — the same incident underlying the aborted criminal prosecution— constituted a violation of the conditions of his parole. Before witnesses were called at the final hearing on November 13, 2008, petitioner’s counsel objected to going forward on the ground, among others, that, by reason of his mental disability, as determined in the criminal case, he was unable either to understand the nature of the proceeding or to assist in his own defense. This objection was overruled and, after the hearing was completed on December 12, 2008, the administrative law judge found that petitioner had violated his parole and recommended an assessment of 24 months of additional imprisonment, which the Parole Board accepted. On his administrative appeal, petitioner argued that the finding that he was unfit for a criminal trial meant that he was likewise unfit to defend himself in the parole revocation proceeding. In denying the appeal, the administrative panel stated that “mental illness is not an excuse for a parole violation.”
Petitioner subsequently commenced this CPLR article 78 proceeding challenging the revocation of his parole. The petition *108 contends that the parole revocation hearing should not have gone forward in light of the finding, rendered just two days before the institution of the parole revocation proceeding, that petitioner was unfit to stand trial on criminal charges based on the same conduct that was alleged to have constituted the parole violation. Petitioner now appeals from the judgment of Supreme Court denying his petition and granting respondent’s cross motion to dismiss the proceeding. We reverse.[2]
We agree with petitioner that the basic requirements of due process applicable to a parole revocation proceeding (see Morrissey v Brewer, 408 US 471 [1972]) should now be construed to preclude going forward with such a proceeding in the event it is determined that the parolee is not mentally competent to participate in the hearing or to assist his counsel in doing so. As an Indiana appellate court recently observed in considering this issue: “Without competency, the minimal due process rights guaranteed to probationers at probation revocation hearings would be rendered useless” (Donald v State, 930 NE2d 76, 80 [Ind Ct App 2010]; see also State v Qualls, 50 Ohio App 3d 56, 58, 552 NE2d 957, 960 [1988] [“the effectiveness of the minimal (due process) standards enumerated in Morrissey . . . may be rendered null if the defendant is not competent to understand and to participate in or to assist counsel in participating in the proceedings”]). We respectfully decline to follow the contrary holdings on this issue of certain older decisions of other departments of the Appellate Division (see Matter of Newcomb v New York State Bd. of Parole, 88 AD2d 1098 [3d Dept 1982], lv denied 57 NY2d 605 [1982], cert denied 459 US 1176 [1983]; People ex rel. Porter v Smith, 71 AD2d 1056 [4th Dept 1979]; People ex rel. Newcomb v Metz, 64 AD2d 219 [3d Dept 1978]).
In this case, there is no question that petitioner was incompetent at the time of his parole revocation hearing. On August 25, 2008, only two days before the parole revocation proceeding was instituted and less than three months before the commencement of the hearing thereon the following November, he was found incompetent to stand trial on criminal charges based on *109 the same conduct alleged to constitute the violation of his parole.[3] Since a determination of incompetency was here made independent of the parole revocation proceeding, the instant appeal does not present us with the questions of (1) whether the Parole Board has authority to determine a parolee’s competence to undergo a revocation hearing and, (2) if not, what should be done when it appears that a parolee charged with a violation may be incompetent. Nevertheless, the concurrence would have us address these unposed questions in a manner sure to cause significant disruption to the parole system of this state. The concurrence apparently would hold that, until the legislature enacts statutory provisions specifying the procedures to be followed in determining the competency of an alleged parole violator, the Parole Board may not make such a determination. Given the holding that an incompetent parolee may not be subjected to a parole revocation hearing, the effect of adopting the concurrence’s position would be to bring to a halt any parole revocation proceeding against a person willing to place his or her own competence in question. In essence, this would excuse such a parolee from complying with the conditions of his or her parole until the legislature acts.
Even if this appeal did present the question of the authority of the Parole Board to determine the competence of an alleged parole violator, we would see no reason to hold that the Board may not render such a determination (in a case where it appears that the parolee’s competence may reasonably be questioned) until the legislature has enacted procedures to govern the making of such a determination. After all, even Newcomb held that the Board of Parole should, in an appropriate case, “consider! ] ... a person’s mental competency during the parole revocation process” (64 AD2d at 222), albeit only as a “possibly mitigating or excusing” factor rather than as a prerequisite to going forward with a revocation hearing (88 AD2d at 1098, citing 64 AD2d at 223). To be sure, it would be beneficial for the legislature to enact procedures and schedules to govern competency issues in parole revocation proceedings. However, contrary to the concurrence’s assertion that we “agree[ ] that the legislature must act” (emphasis added), until the legislature chooses to take action, we are not aware of any impediment, either in constitutional principle or in article 12-B of the *110 Executive Law (governing the jurisdiction and operation of the Board of Parole), to the Board, upon ascertaining that the parolee’s competence is in question, receiving evidence on the parolee’s mental condition and ruling on his or her competence at the outset of a revocation hearing. Of course, a finding of competence will be subject to judicial review in an article 78 proceeding brought to challenge an ultimate revocation of parole.
The concurrence professes to believe that the absence of a statute expressly authorizing the Board to determine the competence of an alleged parole violator means that, until the statutory scheme is amended, a revocation proceeding must come to a halt whenever it reasonably appears that the alleged violator may be incompetent. We disagree. “It is well settled that an agency’s powers include not only those expressly conferred, but also those ‘required by necessary implication’ ” (Matter of Mercy Hosp. of Watertown v New York State Dept. of Social Servs., 79 NY2d 197, 203 [1992] [emphasis added], quoting Matter of City of New York v State of N.Y. Commn. on Cable Tel., 47 NY2d 89, 92 [1979]; see also 2 NY Jur 2d, Administrative Law § 26). For example, in Mercy Hosp., the Court of Appeals held that the Department of Social Services’ use of random sample audits (rather than individual review of all cases within the audit period) to determine whether the petitioner had received Medicaid overpayments was, by necessary implication, within the agency’s statutory authority to administer the Medicaid program.
From our holding that an alleged parole violation cannot be adjudicated while the parolee is incompetent, it follows that a determination of the parolee’s competence (where it is in question) is a necessary prerequisite to the Board’s determining whether to exercise its statutory “power to revoke the community supervision status” of the parolee (Executive Law § 259-c [6]).[4] The situation is analogous to circumstances giving rise to a question of administrative jurisdiction, where it is recognized that, “[l]ike a judicial tribunal, an administrative tribunal has jurisdiction to determine its own jurisdiction” (Pesta v Department of Corr., 63 So 3d 788, 791 [Fla Dist Ct App *111 2011]; see also Whitehall ex rel. Wolfe v Ohio Civ. Rights Commn., 74 Ohio St 3d 120, 123-124, 656 NE2d 684, 688 [1995] [“a(n) (administrative) tribunal having general subject matter jurisdiction of a case possesses authority to determine its own jurisdiction”]; 2 Am Jur 2d, Administrative Law § 284). As the Connecticut Supreme Court has explained:
“Where there is in place a mechanism for adequate judicial review . . . , it is the general rule that an administrative agency may and must determine whether it has jurisdiction in a particular situation. When a particular statute authorizes an administrative agency to act in a particular situation it necessarily confers upon such agency authority to determine whether the situation is such as to authorize the agency to act” (Greater Bridgeport Tr. Dist. v Local Union 1336, Amalgamated Tr. Union, 211 Conn 436, 439, 559 A2d 1113, 1115 [1989] [internal quotation marks and brackets omitted]).
Similarly, here, the statute authorizing the Parole Board to determine whether a parolee has violated parole necessarily confers upon the Board authority to determine whether the parolee possesses the mental competence required for such a determination to be rendered in accordance with due process.[5]
While the concurrence takes us to task for stating that the Parole Board should conduct a competency inquiry when it reasonably appears that the alleged violator may be incompetent, our concurring colleague overlooks the fact that, under his analysis, so too will the Board have to determine whether the parolee’s competence has been placed in question. Moreover, we *112 see no basis for the concurrence’s implication that something like chaos will ensue if the Board makes competency determinations — determinations which, to reiterate, will be subject to judicial review — before the legislature acts. To the contrary, in view of our holding that a parole revocation hearing cannot go forward against a mentally incompetent parolee, it would be far more disruptive to prohibit a parole board to determine the competency of a parolee charged with a parole violation. In any event, as previously noted, the question need not be reached in this case, given that petitioner was adjudged incompetent to stand trial in the criminal prosecution arising from the same conduct at issue in his parole revocation proceeding.
Accordingly, the order of the Supreme Court, Bronx County (Mark S. Friedlander, J.), entered February 4, 2011, which denied the CPLR article 78 petition to annul respondent’s determination finding that petitioner violated the conditions of his parole, revoking his parole and imposing on him an assessment of 24 months of additional imprisonment, and granted respondent’s cross motion to dismiss the petition, should be reversed, on the law, without costs, the petition granted, respondent’s determination annulled, petitioner reinstated to parole, and the cross motion denied.

. One of the psychologists wrote in his report:
“Understanding, Reasoning and Appreciation of Charges: At this *107 time, he is not able to demonstrate either a rational or a [factual] understanding of the proceedings against him. When asked about his own understanding of the current charges against him, Mr. Lopez says, ‘Nothing happened.’ He is unable to coherently relate the incidents of the day in question. When asked his plans to resolve the charges against him, he replied ‘the whole case shall be dismissed.’ He did not demonstrate he has an adequate understanding of the roles of his attorney, the DA or ADA, and the Judge.”
The psychologist continued:
“Mr. Lopez was unable to enter into a rational and meaningful discussion of his legal defense options. Although he had some awareness of the nature of legal charges against him, his thinking was unfocused and rambling. He was not able to effectively assist counsel.
“It is my opinion that his cognitive disorder and possible Dementia would prevent Mr. Lopez from constructing a rational defense and collaboratively working with his attorney. He is not able to adequately convey by his own statements, that he shows a reasonable understanding of the allegations against him and his legal options. He is not able to actively assist in his own defense.”

. [2] Although we have been advised that, since this appeal was argued, petitioner has once again been granted parole, this appeal comes within the exception to the mootness doctrine for orders raising novel and substantial issues that are likely to recur but to evade appellate review (see Mental Hygiene Legal Servs. v Ford, 92 NY2d 500, 505-506 [1998]).

. There is nothing in the record to indicate that any change in petitioner’s mental condition occurred between the finding of incompetence in the criminal case and his parole revocation hearing.

. At the time of the relevant events, Executive Law § 259-c (6) provided in pertinent part that the Board had “the power to revoke the presumptive release, parole, conditional release or post-release supervision status of any person.” The amendment of the statutory language (by L 2011, ch 62, § 1, part C, § 1 subpart A, § 38-b) does not appear to have been intended to effect any substantive change in the law.

. In support of his view that a parole hoard has no authority to determine a parolee’s mental competence to assist in the defense of a parole revocation hearing, our concurring colleague cites People ex rel. Marshall v Webster (266 App Div 637 [3d Dept 1943]). Marshall provides no support for the concurrence’s position. In Marshall, the Third Department disapproved the Parole Board’s denial of parole to an inmate otherwise eligible therefor based solely on “the finding of insanity by a prison physician, unsupported and untested, and adopted by the Parole Board without proof’ (id. at 639). Based on its finding that the Board had, in effect, civilly committed the inmate without a trial on the issue of his sanity (id.), the Third Department reinstated the inmate’s petition for a writ of habeas corpus and remitted the matter to Special Term “for a trial as to the prisoner’s mental condition” (id.). In Marshall, the Board’s finding of insanity, besides having been rendered without due process, was not necessary to any exercise of the Board’s lawful powers. Rather, the Third Department found that, in light of the fact that the inmate appeared to be entitled to parole under the law of the time, the Board’s purported finding that he was mentally ill and ensuing denial of parole was an unauthorized substitute for a civil commitment proceeding.